# In the United States Court of Federal Claims

No. 11-751L
(Filed: April 4, 2013)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

DANIEL GABINO MARTINEZ,

      *Plaintiff*,

v.

THE UNITED STATES,

      *Defendant*.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Fifth Amendment taking; statute of limitations; accrual date; impoundment and sale of cattle.

    *Mark L. Pollot*, Boise, ID, for plaintiff.

    *Bruce K. Trauben*, United States Department of Justice, Environment & Natural Resources Division, Washington, DC, with whom was *Ignacia S. Moreno*, Assistant Attorney General, for defendant.

OPINION

BRUGGINK, Judge.

    Plaintiff Daniel Gabino Martinez seeks compensation under the Fifth Amendment of the United States Constitution for the alleged taking of his cattle by the United States, acting through the Forest Service of the Department of Agriculture. Plaintiff contends that the taking occurred when the Forest Service sold several hundred head of his cattle, seized by the Service because they allegedly were trespassing on federal land. Defendant has filed a motion to dismiss for lack of jurisdiction, asserting that the complaint was filed beyond the six year limitations period. *See* 28 U.S.C. § 2501 (2006). According to defendant, the claim accrued prior to November 8, 2005, because by that time, the United States had already taken possession

of plaintiff's cattle. The matter is fully briefed. On March 6, 2013, after transfer of the case to the undersigned judge, we held oral argument. For the reasons stated below, we deny the government's motion.

BACKGROUND[1]

At the time of the events pled in the complaint, plaintiff owned Martinez Ranch, in Greenlee County, Arizona. Compl. ¶¶ 2, 8. The nearest town is Clifton, and the county rests on Arizona's southeastern border with New Mexico. Plaintiff became sole owner of the ranch in 2004, when he consolidated the Pleasant Valley Ranch and Hickey Ranch. *Id.* ¶¶ 8-10. Within these areas, plaintiff asserted ownership of 160 acres of patented lands and roughly 37,000 acres of water and forage rights for grazing cattle. *See id.* ¶¶ 2, 8-10.

Because of the ranch's location in the Apache-Sitgreaves National Forest ("Forest"), the USDA[2] required plaintiff to have permits to graze cattle in the area. *See id.* ¶¶ 11-14. Plaintiff maintained, however, that he did not need permits to graze because of his prior water and forage rights.

On February 11, 2005, plaintiff received a notice of trespass from the Forest Service, *id.* ¶ 14, which then continued to pressure him to remove the cattle. *See id.* ¶ 17. Plaintiff refused and the Service began to corral and move the cattle, according to the complaint, on November 10, 2005, to a USDA-owned site. *Id.* ¶ 18. This action occurred, plaintiff asserts, without his permission "and without compliance with state law." *Id.*

On November 22, 2005, plaintiff sought an injunction in an Arizona court to prevent the United States from later selling the cattle. *See id.* ¶ 19.

---

[1] The facts are drawn from the Complaint for Just Compensation, attachments to Defendant's Motion to Dismiss and Memorandum in Support Thereof (hereafter "Def.'s Memo."), the Declaration of Kent C. Ellett, Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss (hereafter "Pl.'s Brief"), and the decision of the U.S. Court of Appeals for the Tenth Circuit in *United States v. Martinez*, 433 F. App'x 644 (10th Cir. 2011).

[2] "USDA" refers to the United States Department of Agriculture.

The state court granted a temporary restraining order ("TRO"), Pl.'s Brief 11,[3] and set a hearing date for the motion for preliminary injunction. *See* Compl. ¶ 19. This hearing did not occur because the United States removed the case to the U.S. District Court for the District of Arizona. *Id.*

The district court also failed to hear the motion, however. On December 22, 2005, and with the Arizona court's TRO "still in place," Compl. ¶ 19, the government began to sell plaintiff's cattle. *Id.* The sale continued for several weeks: "377 Cows and Bulls were sold and another 12 head of cattle died due to the stress put on the animals." *Id.* ¶ 20.

Plaintiff contends that his cattle never trespassed on Forest land. Because of his water and forage rights, plaintiff asserts that his cattle could graze where they were found, and without permit. He argues that under Arizona law, the Forest Service employees had no right to remove plaintiff's cattle. *Id.* ¶ 25. The subsequent sale of those cattle, asserts plaintiff, was a taking within the meaning of the Fifth Amendment. *Id.* ¶ 22-23.

Plaintiff filed his complaint here on November 8, 2011. If the United States began to take possession of cattle on November 10, 2005, as the complaint asserts, *see id.* ¶ 18, then plaintiff filed within six years of the United States' taking possession of the cattle and within six years from the United States' selling of the cattle. For purposes of defendant's motion, the date of possession makes no difference to plaintiff, because he argues that the limitations period did not begin to run until December 22, 2005, when the sale began.

To defendant, the date the government took possession triggered the running of the limitations period. It contends that by November 8, 2005, the government had already taken possession of 354 plaintiff-branded cattle. Defendant therefore offers its own facts to support its motion to dismiss. Although the court must take the facts in the complaint at face value and assume them to be true, *Newby v. United States*, 57 Fed. Cl. 283, 290 (2003), facts that conflict with the complaint may be considered when offered in a motion to dismiss for lack of subject matter jurisdiction and when properly

---

[3]Plaintiff refers to the TRO as a preliminary injunction in the complaint. Compl. ¶ 19. In the response brief, plaintiff confirms that the imposed relief was actually a TRO. *See* Pl.'s Brief 11.

supported. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988).[4]

Defendant has attached 21 exhibits to its motion to dismiss. These include, among other things, two deeds which describe plaintiff's ranch, declarations by government employees, and correspondence between plaintiff and the Forest Service. Defendant also later submitted the Declaration of Kent C. Ellett (hereinafter "Ellett Declaration"), who served as Range and Watershed Program Manager in the Forest's Clifton Ranger District. The exhibits to the motion to dismiss, as well as the Ellett Declaration and its exhibits,[5] provide evidence of what defendant asserts happened to plaintiff's cattle.

The start date of the eventual impoundment, as offered by defendant in the Ellett Declaration, conflicts with the complaint: "On October 25, 2005, the Forest Service began to impound in a corral Mr. Martinez' cattle that were gathered and removed from the Forest." Ellett Decl. ¶ 3. Although the complaint alleges that the Forest Service began to remove the cattle on November 10, 2005, Compl. ¶ 18, plaintiff offers no support for this date.

The Ellett Declaration also includes a letter from Forest Supervisor Elaine J. Zieroth to plaintiff. She dated it October 28, 2005, *see* Ellett Decl. Exh. C at 1, and stated that the government at that time held 290[6] head of

---

[4]Much of what defendant offers merely provides more detail than the complaint. To the extent the material does not conflict with the complaint, this evidence will serve as background material and does not prejudice plaintiff. Where relevant, the decision will note when evidence directly conflicts with the complaint and will make reasonable inferences in plaintiff's favor. *See Newby*, 57 Fed. Cl. at 290 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

[5]Attached to the declaration are three exhibits: Exhibit A, "Livestock Record for Pleasant Valley & Hickey Allotments Livestock Impoundment - 2005"; Exhibit B, a "Shipping Table Summary" and a "Removal Table Summary for 'Counters'"; and Exhibit C, a letter from Forest Supervisor Elaine J. Zieroth to Mr. Martinez.

[6]The Ellett Declaration notes that this number, based on what Ms. Zieroth had
(continued...)

plaintiff's cattle. *Id.* This strongly supports defendant's assertion that, at least by October 31, 2005, the majority of plaintiff's cattle had been impounded.

Employees from the Arizona Department of Agriculture had inspected the brands on these cattle. Ms. Zieroth stated, "Based upon this inspection, it is apparent these livestock belong to you." *Id.* Ms. Zieroth asserted that the cattle were grazing unauthorized in the Forest and cited USDA regulations as the authority for the impoundment, *see* 36 C.F.R. § 262.10 (2012). She told plaintiff, "You have 14 days from the date of this letter to make claim to these animals." Ellett Decl. Exh. C at 1.

If plaintiff wished "to claim and remove these livestock," he had to do several things, including "submit proof of ownership," and pay a $873 fee for each "counter animal."[7] *Id.* This fee included the costs for the Forest Service's "gathering, impounding, and feeding the livestock." *Id.* If plaintiff sent his money order for these redemption fees and received his cattle, he would later get another bill for "unauthorized grazing fees and impoundment expenses that have not as yet been calculated." *See id.* at 2. Ms. Zieroth concluded the letter by stating that plaintiff's cattle would be sold at public auction if not redeemed. Plaintiff would receive all auction proceeds, "minus actual costs of impoundment and outstanding unauthorized grazing fees." *Id.*

Plaintiff replied by letter: "I received your letter of extortion today, November 1, 2005." Def.'s Memo. Exh. 10 at 1. He would not pay the redemption fees without further proof of the United States' authority for its actions, *see id.*, and he asked the Service to show where he gave it permission "to enter my private property and take chattels without compensation or a warrant." *Id.*

The Forest Service continued to corral and pen more cattle. Ms. Zieroth then signed on November 1, 2005, a notice of the impoundment of 34

---

[6](...continued)
been told from a preliminary inspection, is inaccurate. Ellett. Decl. ¶ 6. A more accurate count showed that as of October 28, 2005, the Forest Service had impounded 301 cattle. *Id.*; *see id.* Exh. A.

[7]These types of cattle consist of "dry cows, bulls, heifers, steers, and a mother cow-calf pair where the calf is under six (6) months of age." Ellett Decl. ¶ 5. Counters made up 236 of the initially impounded cattle. *Id.* Exh. C at 1.

additional cattle. *See id.* Exh. 11 at 1-2. She restated, "it is apparent these livestock belong to you" and that plaintiff had "14 days from the date of this letter to make claim to these animals." *Id.* at 1.

By November 8, 2005, defendant asserts that 354 cattle were impounded. *See* Ellett Decl. ¶ 7; *id.* Exh. A. A final letter sent by Ms. Zieroth, dated November 15, 2005, notified plaintiff of the impoundment of 15 more cattle, which were collected and penned between November 2 and November 7. Def.'s Memo. Exh. 12 at 1.

In a November 16 notice sent to plaintiff, Ms. Zieroth recited, "I notified you that the USDA Forest Service had impounded over 300 head of your livestock." *Id.* Exh. 13 at 1. Nevertheless, plaintiff had failed to contact her or the district ranger "with a legitimate claim to these cattle and an agreement to pay the redemption price to secure the return of these livestock." *Id.* As a result, the cattle were, on November 23, 2005, to "be sold at auction in Clayton, New Mexico." *Id.*

Plaintiff sought injunctive relief to prevent the sale of the cattle. According to defendant, plaintiff filed a motion for a TRO in the municipal court for Clifton, Arizona, on November 18, 2005. Def.'s Memo. Exh. 4 at 10. The Superior Court of Graham County granted the order on November 22, 2005, in an ex parte hearing. *Id.* Before the hearing for a preliminary injunction took place, the United States removed the case to the U.S. District Court for the District of Arizona. Exhibit 4 to the motion to dismiss is a declaration submitted by the United States before the district court, asserting that the TRO continued to impose feed and holding costs on the government. *See id.* at 1, 10.

Because plaintiff told stockyards in New Mexico that the cattle were stolen, *id.* at 9, those stockyards would not auction the cattle, and the United States had to change the sale location to Dalhart, Texas. *Id.* Instead of November 23, the auctions would begin on December 1, 2005. *Id.* Exh. 14 at 1. In its revision letter to plaintiff, the government reiterated, "You may still claim and recover these livestock by contacting me [Ms. Zieroth] . . . and by paying the redemption price, estimated at this date to be $1,085, prior to the day of sale." *Id.*

A subsequent notice changed the sale date to December 15. *Id.* Exh. 15 at 1. The Service again noted that it held "impounded livestock belonging to

6

you" and told plaintiff to "claim and recover these livestock." *Id.*

The sale began, according to the complaint, "on or about December 22, 2005," Compl. ¶ 19, and continued for several weeks. Defendant provides no exact date for the sale. *See* Def.'s Memo. 8. For purposes of this opinion, the court adopts December 22 as the date.

The Forest Service recognized plaintiff's right to excess auction proceeds, but first applied asserted debts of plaintiff for impoundment costs and unauthorized grazing fees. After applying the proceeds, an unpaid balance still remained, "approximately $133,000." *United States v. Martinez*, 433 F. App'x 644, 645 (10th Cir. 2011). To satisfy that balance, the United States filed an action against Mr. Martinez in the U.S. District Court for the District of New Mexico, on November 27, 2006. *Id.* After the district court awarded a default judgment to the government on July 2, 2007, the United States began to garnish accounts owned by plaintiff. It gave notice on October 6, 2010, that it had satisfied the judgment. *Id.*

On October 27, 2010, the district court issued an order that responded to plaintiff's objections against the garnishments. *Id.* at 645-46. It denied relief and plaintiff then sought review in the U.S. Court of Appeals for the Tenth Circuit. Plaintiff asked for relief from the default judgement under Rule 60(b)(4) of the Federal Rules of Civil Procedure. *Id.* at 646. On July 25, 2011, the court of appeals upheld the judgment. *Id.*

On November 8, 2011, plaintiff filed his takings claim in this court, alleging that the sale of his cattle constituted a taking of his property rights.

DISCUSSION

Plaintiff brought this as a takings claim under the Fifth Amendment to the United States Constitution, which provides that, "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. Defendant, operating on the assumption that the facts should properly be viewed through the prism of the Fifth Amendment, asserts that the court lacks jurisdiction because the complaint is untimely under the six year limitations statute applicable to most claims in this court. 28 U.S.C. § 2501 (2006). The complaint was filed on November 8, 2011. Defendant thus reasons that the cause of action would have to have accrued no later than November 8, 2005. Although plaintiff contends that the taking was triggered by the sale of the

cattle in December 2005, defendant argues that the only relevant events concern the impoundment of the cattle, which primarily took place prior to November 8, 2005.

A takings claim "first accrues when 'all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence.'" *McDonald v. United States*, 37 Fed. Cl. 110, 114 (1997) (quoting *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed. Cir. 1988)).

Defendant argues that the impoundment actions constitute the alleged taking because those events deprived plaintiff of possession and control of the cattle. The government relies primarily on the Supreme Court's decision in *United States v. Dow*, 357 U.S. 17 (1958). In *Dow* the government initiated a condemnation proceeding in 1943 to obtain a narrow right of way for a pipeline. At the time, the heirs of John Garrett and James Bute owned the parent tract of land. *Id.* at 18. The district court entered an order that the government was entitled to immediate possession, although the government did not obtain title under a declaration of taking until 1946. *Id.* at 19. In the interim period between the institution of the condemnation proceeding and the declaration of taking, plaintiff C. M. Dow acquired the parent tract from the heirs. *Id.* at 18-19. The question before the Court was whether Dow or the heirs were entitled to payment. *See id.* at 18. The Court held "that in such cases the date of 'taking' is the date on which the Government entered and appropriated the property to public use." *Id.* at 23. From this holding defendant argues for a broad rule: "a takings claim accrues when the government takes possession of private property." Def.'s Reply 3.[8] The defendant thus asserts that plaintiff's cause of action accrued when the Forest Service took possession of the cattle.

If impoundment of the cattle were grounds for asserting a taking, then presumably those impoundments which took place more than six years prior to the filing of the complaint could be dismissed as stale. During oral argument, however, the court inquired of defendant's counsel whether impoundment was actionable under the takings clause. *See* Oral Arg. Recording at 9:24 AM, Mar. 6, 2013. Counsel responded that it was not.

---

[8]"Def.'s Reply" refers to Defendant's Reply in Support of Its Motion to Dismiss.

Instead, counsel argued that what the Forest Service did would be analyzed as the exercise of a police power, not as a taking: "That motion would be a motion to dismiss on the grounds that this impoundment action was a police action to remove unauthorized cattle from federal land, and it cannot be a taking." *Id.*

If we agree with counsel that impoundment by the government would not create liability for a taking, then it is difficult to understand how plaintiff forfeited its taking claim by not suing before November 8, 2011. *Dow* is not the appropriate referent. In that case, there was no question that the United States wanted ownership of the right of way in question because it would put it to public use. There was nothing about the condemnation proceeding that left room for the landowners' assertion of any interest in the land, other than an entitlement to compensation.

Here, the facts are very different. The Forest Service's interest was merely in getting plaintiff's cattle *off* government land. The Forest Service asserted that the cattle were trespassing. If the cattle could have been persuaded voluntarily to confine themselves to plaintiff's fee lands, then we can safely assume the Forest Service would not have impounded them. Indeed, there are numerous communications from the Forest Service to plaintiff to the effect, "come pick up *your* cattle." Unlike *Doe*, in other words, the government asserted no interest contrary to that of plaintiff, at least prior to sale.

While it is true that inverse condemnations can arise from circumstances in which the government has no conscious intent to take an ownership interest, those typically involve land and typically involve government action that effectively destroys a property owner's rights, with the exception of title. *See, e.g., Ark. Game & Fish Comm'n v. United States*, 133 S. Ct. 511 (2012); *Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992); *Portsmouth Harbor Land & Hotel Co. v. United States*, 260 U.S. 327 (1922); *Pumpelly v. Green Bay Co.*, 13 Wall. 166, 20 L. Ed. 557 (1872). And the Supreme Court has cautioned, "Governmental action short of acquisition of title or occupancy has been held, if its effects are so complete as to deprive the owner of all or most of his interest in the subject matter, to amount to a taking." *United States v. Gen. Motors Corp.*, 323 U.S. 373, 378 (1945). Here, the government recognized plaintiff's ownership and his right to immediate possession of the cattle.

We are reluctant to dismiss the action at this early stage, when plaintiff's theory is that the sale of the cattle constituted the taking, when it is the government's real position that neither the impoundment nor the sale would ever trigger a taking, when the government conduct was pursuant to a regulatory scheme, and when defendant's counsel ventured at oral argument that, if the claim was brought before the sale and viewed as a regulatory taking, "then the government would have an argument that his claim is not ripe." Oral Arg. Recording at 9:39 AM - 9:40 AM. The Claims Court made an apt statement for these circumstances: "Denial of a taking claim on the basis of the defense of limitations is warranted only where the facts alleged demonstrate conclusively that such decision is required as a matter of law." *Peter v. United States*, 6 Cl. Ct. 768, 774 (1984); *see also Juda v. United States*, 6 Cl. Ct. 441, 450 (1984).[9]

## CONCLUSION

In sum, the present motion to dismiss for lack of jurisdiction is based on the untimeliness of the complaint as drawn. Because it is not clear that the complaint is untimely, we deny the motion. The parties are directed to consult with each other and propose further pretrial proceedings in a joint status report, to be filed on or before April 30, 2013.

s/ Eric G. Bruggink
ERIC G. BRUGGINK
Judge

---

[9]We note, moreover, that a case directly on point but not cited by the government, *Klump v. United States,* 54 Fed. Cl. 167, 171 (2002), was treated as a claim for statutory reimbursement under Bureau of Land Management regulations. *See* 43 C.F.R. § 4150 (1993). These "money-mandating regulations," 54 Fed Cl. at 171, are similar to USDA rules under 36 C.F.R. § 262 (2005).