# In the United States Court of Federal Claims

No. 11-751L
(Filed: October 6, 2015)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * | | |
| | * | |
| DANIEL GABINO MARTINEZ, | * | Fifth Amendment taking; |
| | * | Statute of Limitations; 28 U.S.C. |
| Plaintiff, | * | § 1491(a)(1); RCFC 15(a)(2); |
| | * | amending pleadings; seizure |
| v. | * | based on police power. |
| | * | |
| THE UNITED STATES OF AMERICA, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * | | |

*A. Blair Dunn*, Western Agriculture, Resource and Business Advocates, LLP, Albuquerque, NM, for plaintiff.

*Bruce K. Trauben*, United States Department of Justice, Environment & Natural Resources Division, Washington, DC, for defendant. With him were *John C. Cruden*, Assistant Attorney General. Of Counsel, *Dawn Dickman*, General Counsel, United States Department of Agriculture, Albuquerque, NM.

## OPINION AND ORDER

**KAPLAN, Judge.**

The plaintiff in this action, Daniel Gabino Martinez, seeks compensation for the value of certain livestock under the Fifth Amendment's Takings Clause.  The United States Forest Service impounded and sold the livestock because Mr. Martinez had grazed them on land within the Apache-Sitgreaves National Forest without a permit.  Currently before the Court are the government's motion to dismiss Mr. Martinez's claim pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims (RCFC), the government's motion in the alternative for summary judgment pursuant to RCFC 56, and the plaintiff's motion pursuant to RCFC 15 for leave to file an amended complaint.

For the reasons set forth below, the Court concludes that it has jurisdiction over plaintiff's Fifth Amendment claim and so **DENIES** the government's motion to dismiss under RCFC 12(b)(1).  The Court concludes, however, that Mr. Martinez has failed to state a claim on which relief may be granted and so **GRANTS** the government's motion to dismiss under RCFC 12(b)(6).  The government's motion for summary judgment is **DENIED** as moot.  Further, the Court **DENIES** Mr. Martinez's motion for leave to file an amended complaint as untimely and futile.

## BACKGROUND

I.      **Statutory and Regulatory Framework**

As the Supreme Court has noted, "the public lands of the nation are held in trust for the people of the whole country."  Light v. United States, 220 U.S. 523, 537 (1911).  Pursuant to powers granted by the Property Clause of the Constitution, Congress has enacted a number of legislative measures to protect those lands, including statutes designed to prevent overgrazing, provide for improvement and development, and stabilize the livestock industry on public lands.  See Pub. Lands Council v. Babbitt, 529 U.S. 728, 733 (2000); Kleppe v. New Mexico, 426 U.S. 529, 539 (1976).

Pursuant to the Federal Land Policy and Management Act (Federal Land Act), 43 U.S.C. §§ 1701 et seq., the Secretary of Agriculture is authorized to develop regulations that govern the granting, cancellation, suspension, or modification of grazing permits or leases "with respect to lands within National Forests in the sixteen contiguous Western States."  43 U.S.C. § 1752(a).  Those regulations are codified at 36 C.F.R. Part 222, Subpart A.  In addition, the Secretary has promulgated regulations governing the impoundment and disposal of unauthorized livestock, pursuant to his authority under 7 U.S.C. § 1011(f) "[t]o make such rules and regulations as he deems necessary to prevent trespasses and otherwise regulate the use and occupancy of property."  Those regulations are codified at 36 C.F.R. Part 262.

The Secretary's regulations require that all livestock that graze on "National Forest System lands and other lands under Forest Service control must be authorized by a grazing or livestock use permit."  36 C.F.R. § 222.3(a).  When livestock are identified as "unauthorized" or are grazing in numbers "in excess of those authorized by grazing permit," the Forest Service is

empowered to impound the animals "any time five days after written notice of intent to impound such livestock is . . . delivered to such owners."  Id. § 262.10(a).  Once impounded, the Forest Service publishes a "notice of sale of impounded livestock," which provides the owner notice that the animals are under federal control.  Id. § 262.10(d).  Prior to the sale, "[t]he owner may redeem the livestock at any time . . . by submitting proof of ownership and paying for all expenses incurred by the United States in gathering, impounding, and feeding or pasturing the livestock."  Id. § 262.10(e).  If the livestock are not redeemed on or before the date and time fixed for their sale, they may be sold at public sale to the highest bidder.  Id. § 262.10(f).  The proceeds of the sale are due to the owner of the livestock, less the fees due for unauthorized grazing and the impoundment costs incurred by the Forest Service.  Id.

## II.    Impoundment and Sale of Plaintiff's Livestock and Subsequent Actions[1]

The Martinez family owns and operates a cattle ranch in Greenlee County, Arizona, consisting of approximately 160 acres of patented lands.[2]  Compl. ¶¶ 2, 8.  The ranch borders two segments of the Apache-Sitgreaves National Forest where grazing is permitted, the Pleasant Valley allotment and the Hickey allotment.  These federal lands are managed by the United States Forest Service.  Def.'s Mot. to Dismiss ("Def.'s Mot.") Ex. B ¶ 10.

Plaintiff's father, Abelardo Martinez Sr., had held a permit to graze livestock on the Pleasant Valley allotment since 1948.  Def.'s Mot. Ex. A ¶ 18.  In 2001, following an environmental review of the Pleasant Valley allotment, the Forest Service decided to amend Mr. Martinez Sr.'s permit to decrease the amount of time his livestock could graze (as measured in "animal unit months" or AUMs).  Id. ¶ 13.  After unsuccessfully appealing the decision, Mr. Martinez Sr. refused to sign a new permit but continued to graze his livestock on federal land.  Id. ¶¶ 14–16.

---

[1] These facts are based on allegations in plaintiff's complaint, which the Court accepts as true for the purposes of ruling on the motion to dismiss pursuant to RCFC 12(b)(6).  For purposes of background, the Court also includes undisputed facts drawn from the affidavits and other evidence submitted by the parties in connection with the parties' motions.

[2] A "land patent" is "[a]n instrument by which the government conveys a grant of public land to a private person."  Black's Law Dictionary (8th ed. 2004).

Daniel Martinez, the plaintiff in this action, took ownership of the Martinez Ranch on January 21, 2004.  Id. ¶ 22.  He met with the Forest Service on February 10, 2004 and reaffirmed his father's refusal to sign the new permit.  Id. ¶ 23.  As a result of the Martinezes' failure to sign a new grazing permit, and their repeated refusals to conform their use to the revised AUMs allowed, the Forest Service canceled the Martinezes' permit to graze on the Pleasant Valley allotment on August 27, 2004.  Id. ¶ 28.  Nonetheless, Mr. Martinez continued to graze his livestock on the Pleasant Valley allotment and the Hickey allotment (where the Martinezes never had a permit to graze to begin with) throughout the summer of 2004.  Id. ¶ 26.

On October 14, 2004 the Forest Service issued a "Notice of Intent to Impound Unauthorized Livestock" and, citing 36 C.F.R. § 262.10(f), informed Mr. Martinez that his livestock would be impounded unless he immediately remove them from federal lands.  Def.'s Mot. Ex. D.  The Forest Service issued a second notice on July 25, 2005, which Mr. Martinez returned with the words "Refused for Fraud" written across the notice.  Def.'s Mot. Ex. E; Ex. F.

The Forest Service then sent a letter on October 20, 2005, informing Mr. Martinez he could avoid the "livestock impoundment actions currently in motion" by removing his livestock from the Pleasant Valley and Hickey allotments and by agreeing not to graze his livestock on the national forest without first receiving a permit.  Def.'s Mot. Ex. G.  The Forest Service asked that Mr. Martinez respond by October 21, 2005, to formulate an agreement to come into compliance; otherwise the Forest Service would impound his livestock on October 22, 2005.  Id.  The next day, Mr. Martinez responded with his own letter, suggesting that the Forest Service was "confusing land owned by the United States with [his] property" and maintaining that the livestock in question were grazing legally, according to "vested rights" sold by the United States to the original owner of the Martinez Ranch.  Def.'s Mot. Ex. H.  In a second letter sent the same day, Mr. Martinez requested documentation demonstrating the Forest Service's authority to regulate the Pleasant Valley and Hickey allotments.  Id.

On October 22, 2005, pursuant to 36 C.F.R. § 262.10(a), the Forest Service gathered and impounded Mr. Martinez's livestock grazing on federal land.  Def.'s Mot. Ex. A ¶ 34.  In letters dated October 28, 2005, and November 1, 2005, the Forest Service informed Mr. Martinez that it had impounded over 300 livestock belonging to him, and that he had fourteen days to claim his animals and pay a redemption fee.  Def.'s Mot. Ex. M; Ex. N.  If he failed to do so, the letters

4

continued, the livestock would be "transported to a sale barn, following the 14 day holding period, and sold at a public auction to the highest bidder," pursuant to 36 C.F.R. § 262.10(f).  Id. Mr. Martinez responded by accusing the Forest Service of stealing his property and acting outside of its authority.  Def.'s Mot. Ex. Q.

The Forest Service scheduled the public auction for December 15, 2005, and provided Mr. Martinez notice, pursuant to 36 C.F.R. § 262.10(f), in a letter dated December 6, 2005. Def.'s Mot. Ex. T.  The Forest Service subsequently informed Mr. Martinez that an additional auction was scheduled for December 22, 2005.  Def.'s Mot. Ex. U.  Each time, the Forest Service provided Mr. Martinez the opportunity to claim and recover his livestock.  Id.  Mr. Martinez failed to reclaim his livestock, and in letters dated December 16, 2005, and January 9, 2006, the Forest Service informed Mr. Martinez that it had sold 365 animals and that twelve animals had died during transfer.  Def.'s Mot. Ex. V; Ex. W.  The net proceeds of the sale totaled approximately $176,700, which the Forest Service credited against the "cost incurred for gathering and caring for the cattle, livestock inspections, care and actual selling of the cattle at the sale facility."  Id.; see also Compl., United States v. Martinez, No. 06-cv-1146 (D.N.M. Nov. 27, 2006), ECF No. 1.

### III.    Prior Litigation

On November 27, 2006, the United States filed suit in district court in New Mexico, claiming that Mr. Martinez owed a balance of $132,642.37, plus interest, to the United States for the costs it incurred to gather, impound, care for, and auction the livestock.  Compl., Martinez, No. 06-cv-1146, at 10–11; Def.'s Mot. Ex. Z.[3]  Mr. Martinez made a special appearance to contest the district court's jurisdiction and filed a variety of pleadings to that end.  See United States v. Martinez, 433 F. App'x 644, 645 (10th Cir. 2011); Def.'s Mot. Ex. AB.  He failed, however, to file an answer to the complaint or formally appear before the court.  See Def.'s Mot. Ex. AB.  The district court entered a default judgment, finding that Mr. Martinez's conduct was "plainly willful (the court's orders have repeatedly been attached to pleadings and marked

---

[3] This sum represents the actual costs the United States incurred for the impoundment, transportation, and sale of the livestock, offset by a credit for the net proceeds of the auction sale and a credit for the value of the livestock that died prior to sale. Def.'s Mot. Ex. Z.

'Refused for Fraud') and it is evident that [Mr. Martinez] has no intention of abiding by the orders of the court and its rules." Order at 4, <u>Martinez</u>, No. 06-cv-1146, ECF No. 32; Ex. AA.

The district court then directed the parties to attend an evidentiary hearing on June 26, 2007 to determine the proper amount of damages.  Order at 4, <u>Martinez</u>, No. 06-cv-1146, ECF No. 32.  Mr. Martinez did not attend the hearing.  Following the hearing, at which six witnesses testified for the government, the court found that "the costs incurred by the government were reasonable and necessary and resulted solely from [Mr. Martinez's] refusal to comply with the validly promulgated rules and regulations applicable to grazing livestock on public lands," and entered judgement against Mr. Martinez for the entire amount sought by the United States. Decision at 1, <u>Martinez</u>, No. 06-cv-1146, ECF No. 42; Ex. Y.  Mr. Martinez filed documents with the court asserting that the judgement was fraudulent, but did not file a formal appeal.

On October 27, 2010, the district court denied Mr. Martinez's motion for relief from judgement under Rule 60 of the Federal Rules of Civil Procedure.  Order, <u>Martinez</u>, No. 06-cv-1146, ECF No. 101.  He appealed the district court's decision to the United States Court of Appeals for the Tenth Circuit, which affirmed.  <u>See</u> <u>Martinez</u>, 433 F. App'x at 645.

## IV.    The Present Complaint

Mr. Martinez filed the present "Complaint for Just Compensation" in this Court on November 8, 2011.  In that complaint, he alleges that the sale of his livestock to third parties constituted a taking under the Fifth Amendment of the Constitution.  Compl. ¶¶ 22–23. Estimating each animal's fair market value at $1,640, Mr. Martinez requests that the Court award damages of $637,970 plus interest for the livestock "taken" by the Forest Service.  <u>Id.</u> ¶¶ 20, 26.

On March 13, 2012, the United States moved to dismiss for lack of jurisdiction, claiming that the action was time barred.  It argued that, to the extent that Mr. Martinez had stated a claim under the Fifth Amendment, the claim accrued when Mr. Martinez's livestock were impounded in October of 2005, which was more than six years before he filed suit in this Court.  Def.'s Mot. to Dismiss at 12, ECF No. 8.  After receiving briefs and holding an oral argument on the question, Judge Bruggink denied the government's motion, reasoning that:

> We are reluctant to dismiss the action at this early stage, when plaintiff's
> theory is that the sale of the cattle constituted the taking, when it is the

government's real position that neither the impoundment nor the sale would ever trigger a taking, when the government conduct was pursuant to a regulatory scheme, and when defendant's counsel ventured at oral argument that, if the claim was brought before the sale and viewed as a regulatory taking, "then the government would have an argument that the claim is not ripe."

Opinion at 10, ECF No. 21.

Following Judge Bruggink's denial of the government's motion to dismiss, the parties engaged in discovery, which concluded on February 21, 2015. In the interim, the case was transferred to the undersigned.

Thereafter, on March 17, 2015 plaintiff filed a motion to amend his complaint. In addition, on April 20, 2015, the government filed the motion to dismiss or in the alternative for summary judgment that is currently before the Court. Oral argument was held on the pending motions on September 25, 2015.

## DISCUSSION

### I.      Motion to Dismiss under RCFC 12(b)(1)

#### A.   Standard for Motion to Dismiss for Lack of Jurisdiction

In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all undisputed facts in the pleadings and draws all reasonable inferences in favor of the plaintiff. Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011). The court may "inquire into jurisdictional facts" to determine whether it has jurisdiction. Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991). It may therefore consider matters outside of the pleadings in ruling on a motion to dismiss pursuant to RCFC 12(b)(1). See Reynolds v. Army and Airforce Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988) (finding that to determine jurisdiction the "court may consider relevant evidence in order to resolve the factual dispute"). The burden of establishing jurisdiction is on the plaintiff. Trusted Integration, 659 F.3d at 1163.

### B.  Application of Standard

Under the Tucker Act, this Court is granted jurisdiction to "render judgement upon any claim against the United States founded . . . upon the Constitution . . . for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  It is well established that this Court has jurisdiction under the Tucker Act "to the extent the [plaintiff has] a nonfrivolous takings claim founded upon the Fifth Amendment."  Moden v. United States, 404 F.3d 1335, 1341 (Fed. Cir. 2005).  So long as such a claim is not "so insubstantial, implausible, foreclosed by prior decisions, or otherwise completely devoid of merit as not to involve a federal controversy" the court should hear the complaint.  Id. at 1340 (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998)).

In this case, in addition to seeking compensation under the Fifth Amendment for an alleged taking of his property, Mr. Martinez has raised a variety of challenges to the government's authority to impound and sell his livestock. Compl. ¶¶ 24–26; Oral Arg. at 33:00. However, whether based on the Constitution, a statute, or a regulation, such challenges cannot be pursued before this Court.[4]  The Court will therefore assume for the purpose of deciding Mr. Martinez's taking claim that the government's actions were lawful.  Acadia Tech., Inc. v. United States, 458 F.3d 1327, 1330–31 (Fed. Cir. 2006) (assuming for the purpose of addressing takings claim that government action was lawful and not in violation of regulations); Tabb Lakes, Ltd. v. United States, 10 F.3d 796, 802 (Fed. Cir. 1993) (citing Fla. Rock Indus., Inc. v. United States, 791 F.2d 893, 905 (Fed. Cir. 1986)) (holding that "the claimant must concede the validity of the government action which is the basis of the taking claim to bring suit under the Tucker Act").

The government does not deny that—to the extent that the Court assumes the lawfulness of the impoundment and sale of the livestock—Mr. Martinez has alleged a Fifth Amendment claim that is within this Court's Tucker Act jurisdiction.  It argues, however, that this Court

---

[4] The Federal Circuit has ruled that "an uncompensated taking and an unlawful government action constitute 'two separate wrongs [that] give rise to two separate causes of action.'"  Rith Energy, Inc. v. United States, 247 F.3d 1355, 1365 (Fed. Cir. 2001) (alteration in original) (quoting Del Rio Drilling Programs, Inc. v. United States, 146 F.3d 1358, 1364 (Fed. Cir. 1998)); Lion Raisin, Inc. v. United States, 416 F.3d 1356, 1369–70 (2005).  As a result, "a property owner is free either to sue in district court for asserted improprieties committed in the course of the challenged action or to sue for an uncompensated taking in the Court of Federal Claims."  Rith, 247 F.3d, 1365.

cannot assert jurisdiction over Mr. Martinez's takings claim because it is barred by the Tucker Act's six-year statute of limitations.  See 28 U.S.C. § 2501 (stating that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues").

A takings claim accrues when "all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence." Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1577 (Fed. Cir. 1988).  According to the government, even assuming that Mr. Martinez had stated a claim under the Takings Clause of the Fifth Amendment, that claim accrued at the time the Forest Service seized control of his livestock through its impoundment on October 19, 2005, which was more than six years before he filed his complaint in this Court on November 8, 2011.  Mr. Martinez, on the other hand, argues that the taking in this case took place when the government sold his livestock in December 2005 and January 2006, within the six year limitations period.  Before the sales, Mr. Martinez claims, the government continued to recognize his ownership rights, and expressly urged him to come and retrieve his livestock.

In fact, as explained in greater detail below, neither the impoundment nor sale of Mr. Martinez's livestock can be considered a "taking" because the government impounded and sold Mr. Martinez's livestock as an exercise of its lawful police power, not its eminent domain authority.  See Bennis v. Michigan, 516 U.S. 442, 452 (1996).  As Judge Bruggink suggested when the government first raised its statute of limitations argument, if there was no taking when the livestock were impounded (as the government itself argues), "it is difficult to understand" how Mr. Martinez could have forfeited any Fifth Amendment claim by not bringing such a claim within six years of the impoundment.  Opinion at 9, ECF No. 21.

Therefore, for purposes of determining its jurisdiction, the Court will not adopt the government's recasting of Mr. Martinez's takings claim.  Instead, it will construe that claim as Mr. Martinez has asserted it: that the government's sale of his livestock constituted a taking of his property for which compensation is due. While that claim does not survive a motion to dismiss under Rule 12(b)(6) for the reasons described below, the claim as alleged accrued within

the limitations period. Therefore, the Court denies the government's motion to dismiss under Rule 12(b)(1).[5]

## II. Failure to State a Claim

### A. <u>Standards for RCFC 12(b)(6) Motion</u>

When considering a motion to dismiss for failure to state a claim under RCFC 12(b)(6), the court accepts as true the complaint's undisputed factual allegations and construes them in the light most favorable to the plaintiff.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>Gould, Inc. v. United States</u>, 935 F.2d 1271, 1274 (Fed. Cir. 1991).  While the court must draw all reasonable inferences in favor of the non-moving party, <u>Sommers Oil Co. v. United States</u>, 241 F.3d 1375, 1378 (Fed. Cir. 2001), the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  <u>Bell Atlantic Corp.  v. Twombly</u>, 550 U.S. 544, 555 (2007). In other words, plaintiff's claim must be plausible on its face.  <u>Id.</u> at 570; <u>see also</u> <u>Acceptance Ins. Cos., Inc. v. United States</u>, 583 F.3d 849, 853 (Fed. Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).

---

[5] The Court notes that, even assuming there had been a taking in this case at some point, it would not have occurred when the livestock were impounded.  To be sure, a taking may be found even before there is a transfer of title.  Such a taking may occur when the government takes possession of property in contemplation of ultimately assuming such ownership and devoting the property to public use.  <u>See</u> <u>Best v. Humboldt Placer Min. Co.</u>, 371 U.S. 334, 340 (1963); <u>United States v. Dow</u>, 357 U.S. 17, 21 (1958); <u>Caldwell v. United States</u>, 391 F.3d 1226, 1235 (Fed. Cir. 2004). But in this case it was not the government's intent at the time of impoundment to take ownership of the property or to put it to public use.  Rather, the government's interest in this case was, as Judge Bruggink observed, in getting the livestock off of federal lands, and in having Mr. Martinez come and claim it.  This was made clear to Mr. Martinez through his correspondence with the Forest Service, which repeatedly urged him to retrieve his livestock so that the government would not be required to sell it.  Accordingly, even were the Court to assume for purposes of determining its jurisdiction that Mr. Martinez's property was "taken" at some point in this case, it is clear that such taking did not occur at the time of impoundment.  <u>See</u> <u>Boling v. United States</u>, 220 F.3d 1365, 1370 (Fed. Cir. 2000) (holding that "the key date for accrual purposes is the date on which the plaintiff's [property] has been clearly and permanently taken.")

### B. Application of Standard

The Fifth Amendment of the Constitution provides in pertinent part that "private property [shall not] be taken for public use without just compensation." U.S. Const. amend. V. The purpose of the Takings Clause is to protect individuals "from bearing public burdens 'which, in all fairness and justice, should be borne by the public as a whole.'" Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 303-04 (2002) (quoting Armstrong v. United States, 364 U.S. 40, 49 (1960)).

The Federal Circuit uses a two-part test to determine whether a physical taking has occurred. First, the court must determine "whether the claimant has established a property interest for purposes of the Fifth Amendment," and second, "the court must determine whether the governmental action at issue amounted to a compensable taking of that property interest." Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d 1363, 1372 (Fed. Cir. 2004); see also Estate of Hage v. United States, 687 F.3d 1281, 1286 (Fed. Cir. 2012).

In this case, the government does not deny that Mr. Martinez had a property interest in his livestock. It contends, however, that Mr. Martinez failed to state a takings claim under the Fifth Amendment because the Forest Service's impoundment of the livestock was a police action, and not undertaken pursuant to the government's eminent domain power to take property for public use. Def.'s Mot. at 16–18. The Court agrees.

It is well established that the Fifth Amendment's Taking Clause is not applicable where property is taken by the government on the basis of its exercise of its police powers. Bennis, 516 U.S. at 452 (observing that the government "may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain"). Put another way, "so long as the government's exercise of authority was pursuant to some power other than eminent domain, then the plaintiff has failed to state a claim for compensation under the Fifth Amendment." AmeriSource Corp. v. United States, 525 F.3d 1149, 1154 (Fed. Cir. 2008); see also Acadia Tech., 458 F.3d at 1330–31 (holding that the government's seizure of 20,923 cooling fans under the provisions of the Tariff Act did not constitute a taking under the Fifth Amendment); Kam-Almaz v. United States, 682 F.3d 1364, 1371 (Fed. Cir. 2012) (holding that the government's seizure of a laptop at an airport

was a police action, not for a public purpose, and therefore not a taking under the Fifth Amendment).

While Mr. Martinez characterizes the government's sale of his livestock as a "taking," he does not argue (nor could he) that the government acted pursuant to its eminent domain powers. Indeed, as Mr. Martinez recognized in his original complaint, the government relied upon its statutory and regulatory authority when it impounded and sold his property. See Compl. ¶ 2. As discussed, the Property Clause of the Constitution explicitly provides the federal government the power "to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. Const. art. IV, § 3, cl. 2. Congress has exercised this power by delegating authority to manage the national forests in the western states to the Secretary of Agriculture, who in turn issued regulations that charge the Forest Service with administering the grazing permit system and preventing trespasses. The Forest Service thus impounded and sold Mr. Martinez's livestock pursuant to its regulatory authority to protect federal land, a police power derived from the Constitution. Because the government acted pursuant to its police powers and not its power of eminent domain, Mr. Martinez has failed to state a claim under the Fifth Amendment.[6]

### III.   Plaintiff's Motion to Amend the Complaint

Some two months after discovery was completed in this case, on March 17, 2015, Mr. Martinez filed a motion to amend the complaint in order to add additional claims that he asserted "came to light" during discovery. Pl.'s Mot. for Leave to File Am. Compl. at 1 ¶ 2, ECF No. 46. Among many other things, Mr. Martinez's proposed amended complaint requests that the Court "determine whether the [Forest Service] acted within the scope of authority delegated." Proposed Am. Compl. at 26, ECF No. 46-2. Like the memoranda plaintiff has already filed in connection with the government's motion to dismiss, the amended complaint (which is some fifty pages in length) includes a bewildering array of challenges to the government's authority to impound and sell Mr. Martinez's livestock. These include claims under numerous constitutional

---

[6] In light of its conclusion that Mr. Martinez has failed to state a claim under the Takings Clause, the Court does not address the government's argument that—in any event—principles of res judicata preclude Mr. Martinez from litigating the issue of whether he was properly compensated for the sale of his livestock.

provisions (both state and federal), claims founded on numerous state and federal statutes, and what appear to be contract claims. Id. at 42–45.  The amended complaint also identifies a litany of consequential damages that Mr. Martinez alleges were incurred as a result of the loss of his livestock, and adds a request for injunctive relief against the Forest Service.  Id. at 45–47.

Under RCFC 15(a)(2), the court may permit a plaintiff to amend his or her pleadings "when justice so requires."  Discretion to afford a party leave to amend lies with the court. Where the court finds that amending the complaint would cause "undue delay," "undue prejudice to the opposing party," or where "apparent futility" defeats the purpose of the amendment, the court may deny the plaintiff's motion to amend.  Mitsui Foods, Inc. v. United States, 867 F.2d 1401, 1403-04 (Fed. Cir. 1989) (emphasis omitted) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

As is apparent, for the reasons set forth above, the challenges to the government's authority to impound and sell Mr. Martinez's livestock that are set forth in his amended complaint are not within the Court's jurisdiction.  Further, consequential damages are not a component of just compensation under the Fifth Amendment.  See Kimball Laundry Co. v. United States, 338 U.S. 1, 5–6 (1949); Yuba Natural Res., Inc. v. United States, 904 F.2d 1577, 1581 (Fed. Cir. 1990).  Permitting Mr. Martinez to amend his complaint to add these claims would, accordingly, be futile.

Indeed, apparently recognizing that the proposed amended complaint contains numerous claims that are not within this Court's jurisdiction, or otherwise are clearly without merit, counsel for Mr. Martinez explicitly abandoned all but one of the new claims during oral argument on the government's motion to dismiss.  He also offered to withdraw the proposed amended complaint and file a new, shorter one.  Oral Arg. at 54:56.  Thus, counsel stated that, notwithstanding the contents of the fifty-page proposed amended complaint lodged with his motion to amend, Mr. Martinez actually sought leave to make only a single new claim.  Oral Arg. at 53:36.  That claim, which is referenced only obliquely in the proposed amended

complaint, is that "the seizure of [his] livestock has abrogated his property interest in the beneficial use of water." Proposed Am. Compl. at 31.[7]

The Court concludes that it would not serve justice to allow Mr. Martinez to amend his complaint to add his newly conceived water rights claim at this juncture in the litigation. First, although Mr. Martinez asserts in his motion that this claim came to his attention as a result of discovery, this assertion has no basis. Indeed, at oral argument counsel acknowledged that the claim could have been made at the time the original complaint was filed because all facts relevant to that claim were already known to plaintiff. Oral Arg. at 37:34.

Further, in determining whether an amendment is prejudicial, the court looks to whether the amended complaint is based on the same theory as the original complaint. See Cencast Servs., L.P. v. United States, 729 F.3d 1352, 1364 (Fed. Cir. 2013). If the court finds that "the amendment [to a pleading] substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudicial." Id. (quoting 6 Wright & Miller, Federal Practice and Procedure § 1487 (Apr. 2013) (alteration in original)).

In this case, the new claim that Mr. Martinez seeks to add changes the single theory upon which the case has been proceeding up to this point—that there was a taking of Mr. Martinez's livestock and that he should be compensated for the value of the livestock taken. The new claim, as best the Court understands it, and as articulated by counsel at oral argument, is that Mr. Martinez's rights to beneficial use of the water within the national forest were abrogated by the seizure and sale of his livestock. Specifically, he argues, because his livestock were sold, he can no longer exercise his rights to use of the water on government land for those livestock. Oral Arg. at 38:36.

Even assuming that such a dubious and poorly articulated claim could withstand a motion to dismiss under RCFC 12(b)(6), adding it to the case at this point would unduly burden the government after more than three years of litigation in this Court. Thus, adding the claim would

---

[7] Not only is the claim referenced only obliquely in the body of the proposed amended complaint, it is not referenced at all in the prayer for relief. Proposed Am. Compl. at 45–47.

likely result in a new round of briefing on motions to dismiss, and, assuming the claim survived such a motion, a new round of discovery.

In short, as the government has pointed out, issues surrounding the impoundment and sale of Mr. Martinez's livestock in 2005 have been in litigation for almost ten years in both the state and federal courts.  It does not serve the interests of justice to take this dispute into its second decade by permitting Mr. Martinez to amend his complaint at this late date to add the new claim counsel articulated at oral argument.

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** the government's motion to dismiss for failure to state a claim upon which relief can be granted and **DENIES** the plaintiff's motion to amend his complaint.  Plaintiff's complaint is **DISMISSED**.  The Clerk of the Court is directed to enter judgement accordingly.  Each party shall bear its own costs.

**IT IS SO ORDERED.**

s/Elaine D. Kaplan
ELAINE D. KAPLAN
Judge, U.S. Court of Federal Claims.